DF 3129
/s/ Douglas M. Fisher
_____
Douglas M. Fisher
Solomon and Solomon, P.C.
5 Columbia Circle
Albany, New York 12203
518 456-7200

Local Address:
C/o Harry J. Friedberg
551 5th Avenue
New York, New York 10176

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

In re:
    MIRI SCHLESINGER,

                      Debtor

CITIBANK (SOUTH DAKOTA), N.A.,

                      Plaintiff,

      -against-

MIRI SCHLESINGER,

                      Defendant.

Chapter 7
Case No. 05-32170
Adversary No.05-1520

**PLAINTIFF'S MEMORANDUM SUPPORTING DEFAULT JUDGMENT**

# FACTS

Citibank (South Dakota), N.A., hereinafter "Citibank", has sued Miri Schlesinger hereinafter "Defendant", Chapter 7 debtor, to have certain of her debts declared non-dischargeable under 11 U.S.C. Section 523(a)(2)(A) on the ground that they were the result of fraud, false pretenses and false representations.

The Defendant had a credit card accounts with Plaintiff

Between August 11, 2005 and September 2, 2005, the debtor made charges of $1,162.04. Returns were processed for $269.63. No payment was then made. Between September 13, 2005 and October 3, 2005, the debtor charged $1,966.20 including $142.59 at H&M, $524.79 at Macy's, $417.53 at Sears, $200.20 again at H&M and $371.71 at Future Mom. No payment was made.

The Bankruptcy Petition and case facts show

- The petition was filed on October 14, 2005.
- The debtor owns no real property and therefore no equity exists to access to pay creditors.
- The debtor has nominal personal property which could be used to pay creditors.
- The debtor has credit debt of over $125,000.00.
- The debtor shows no income.

# DISCUSSION

The Bankruptcy Code excepts from discharge any debt "for money, property, services or an extension, renewal or refinance of credit by...(A) false pretenses, a false representation or actual fraud..." 11 U.S.C. Section 523(a)(2)(A). This section is not identical with the parallel exceptions in the Bankruptcy Act. Section 17a(2) of Bankruptcy Act (formerly 11 U.S.C. Section 35a(2)) excepted from discharge liability for obtaining money or property by false pretenses or

false representations. Other types of fraud were excepted from discharge only where the debtor was "acting as an officer or in any fiduciary capacity". See former 11 U.S.C. Section 35(a)(4).

Despite the fact that the terms "false pretenses and false representations" could have been an overt misrepresentation, the Courts have held that they can embrace credit card and credit account fraud, i.e. the use of credit cards prior to filing for bankruptcy or the access of a credit account by credit check similar to a cash advance access prior to bankruptcy if there is neither intention nor ability to repay the debts incurred. The Court's find the necessary overt misrepresentation in the presentation of either the credit card and the signature on the credit slip, or by analogy execution of ready credit checks to access the credit account as analogous to a cash advance on a credit card. These were held to be representations that the debtor had the wherewithal as well as the intention to pay for purchases and cash advances. If these representations are false, the debts created by them are held to be non-dischargeable. In re: Black, 373 F.Supp. 105, 107 (E.D. Wis. 1974); In re: D'Amico, 1 B.R. 170 (Bkrtcy. W.D.N.Y 1979).

The United States Bankruptcy Code now makes credit card and credit account fraud easier to reach by making non-dischargeable, all debts arising from any type of fraud, not simply those involving false pretenses or false representations. An academic commentator tracing the legislative history of the United States Bankruptcy Code concluded that the change in the language of the statute was intended to remove the requirement of an overt misrepresentation. See Zaretski, Barry L., "The Fraud Exception to Discharge Under the New Bankruptcy Code," 53 American Bankruptcy Law Journal, p. 253, 257 (1979). In Professor Zaretski's view, adding fraud to the false pretenses and false representations section now permits the Court to except from discharge, debts incurred without intent or ability to repay, or by use of other false implied representations without the need to stretch the false representations and false pretenses language.

The applicable law is well settled. It is black letter law that a representation of the maker's own intention to do or not do a particular thing is fraudulent if he does not have the wherewithal or ability to carry out that intention. See Restatement (2d), Torts, Section 570 (1977). "A person's intent, his state of mind, it has long been recognized, is capable of ascertainment and a statement of present intention is deemed a statement of a material existing

fact, sufficient to support a fraud action". See Channel Master Corp v. Aluminum Ltd., 4 N.Y.2d 403, 407 (1958). More must be shown of course, than that the promise was not kept. It must be proved that there was neither wherewithal nor ability to perform.

**BURDEN OF PROOF**

The burden of proof is generally on the petitioning creditor to show by a preponderance of the evidence that a particular debt should not be discharged. Grogan v Garner, 498 U.S. (1991).

**REPRESENTATION OF INTENT TO REPAY**

The presentation of a credit card and signature on cash advance slips or the execution of a ready credit check to access funds from a credit account constitutes an express and implied promise that the credit card holder or ready credit account maker at some future time will pay the obligation incurred in accordance with the terms and conditions of usage of the account. See AT&T Universal Card Services v Mercer (In Re Mercer), 246 F.3d 391, 404 (5th Cir 2001). See also American Express v Hashemi, 104 F.3d 1122, 1126 (9th Cir 1996); Rembert v AT&T Universal Card Services, 141 F.3d 277, 281 (6th Cir 1998). The credit is extended in reliance on that promise, establishment of the account from other information provided and history of the account as the holder of the card or account intends. If it can be established that at the time the debt was incurred, the debtor did not have the wherewithal or intent to pay then all the elements of fraud are present.

Credit card and credit line cases overwhelmingly have found that the customer's use of the card or credit line is regarded as an implied if not actual representation to the credit issuer that the holder has the intention to pay for his purchases or cash advances. See In re: Sutliff, 112 B.R. 680 (Bkrtcy. PA 1990)(In which Judge Thomas Gibbons found that where a debtor accessed his card for 134 separate charges over a two month period and 69 of which were while the debtor had defaulted in previous month's monthly payments, the charges would be held non-dischargeable since the debtor was unemployed and based on income, expenses and total debt due he did not have the ability to pay for the charges and the Court concluded intent to

deceive the Plaintiff through the use of the card); In re: Tondreau, 117 B.R. 397 (Bkrtcy. N.D. Ind. 1989)(In which Judge Robert Rodsbaugh, Senior Bankruptcy Judge held non-dischargeable debts incurred on a credit card where the debtor continued to use the card after her privileges were revoked for overlimit and non-payment charges. In addition, she had insufficient income to service fixed living expense and credit debt); In re: Hinman, 120 B.R. 1018 (Bkrtcy. D.N.D. 1990)(In which Judge William Hill found for Citicorp in a case where the debtors used the card at a time when the debtors had insufficient income to service their credit debt and no good faith belief of future income to service the debt. Furthermore, the charges were for collectible coins, fishing gear and luxury clothing, goods which the Court emphasized were unnecessary when compared to the true need of items such as a good used car); In re: Hansbury, 128 B.R. 320 (Bkrtcy D. Mass. 1991)(wherein Judge Carol Kenner found for Citibank in a challenge to the debtor's use of his credit card which was made up mostly of cash advances for gambling and where the debtor had insufficient income or good faith belief of future income to service his credit debt. The Court ruled entirely on Section 523(a)(2)(A) without any consideration of 523(a)(2)(C); In re: Kurali, 132 B.R. 468 (Bkrtcy. M.D.Fla. 1991)(wherein Alexander Paskay, Chief Judge, found for Corestates Bank in a credit card challenge under 523(a)(2)(A) where the debtor was unemployed for 11 months, and even though he ultimately obtained employment shortly after the cash advances taken, his income was clearly insufficient to service his substantial credit debt); See also, In re: Bartlett, 128 B.R. 775 (Bkrtcy. W.D.Mo. 1991); In re: Davis, 134 B.R. 990 (Bkrtcy M.D.Fla. 1991).

More recent decisions have examined at length the problems associated with establishing the traditional elements of fraud, to wit
  a. A false representation
  b. Intent to deceive
  c. Reliance
  d. Damages

The circumstances are such that the actual on point transaction is between the debtor and the bank, merchant or automatic teller. The most recent decisions on point, and the ones which Plaintiff believe should be adopted hold and agree that the use of the credit card constitutes an implied if not actual representation that the debtor intends to repay the money borrowed. MBNA

5

v Parkhurst, 202 B.R. 816 (Bkrtcy N.D.N.Y. 1996); In Re Feld, 203 B.R. 360 (Bkrtcy E.D.P.A. 1996). The purport of these decisions makes clear that a credit card or credit line holder's use of his or her account is an implied or actual representation to the credit issuer that the holder has intention to pay for the purchases or cash advances accessed

More recent decisions on this issue provides a detailed review of the law and demonstrates the appropriate burdens and findings in the field. See AT&T Universal Card Services v Mercer (In Re Mercer), 246 F.3d 391 (5th Cir 2001). See also American Express v Hashemi, 104 F.3d 1122 (9th Cir 1996); Rembert v AT&T Universal Card Services, 141 F.3d 277 (6th Cir 1998).

## WHETHER THE REPRESENTATION IS FALSE

Since obviously few debtors will admit to a fraudulent intent, such intent must be established by circumstantial evidence. If all the facts are inconsistent with the intent to repay, then the use of the credit card or access of the credit account is fraudulent. While certain fact patterns tend to recur, the question of intent is an issue of fact to be decided with relationship to the facts of the particular case before the Court. See In Re Mercer 246 F.3d at 409; LA Capitol Fed Credit Union v Melancon (In Re Melancon), 233 B.R. 300, 318 (Bkrtcy M.D. La 1998).

There have been a number of cases in which the Courts have found various criterion which may be pertinent in determining the issue of non-dischargeability. These include the amount of the charges or advances and the financial condition of the debtor at the time the advances were made. In re: Stewart, 7 B.R. 551 (Bkrtcy M.D. Ga. 1980). Other circumstances to which Courts have given weight are whether the debtor was insolvent by virtue of not being able to pay debts at the time of the charges or advances. Manufacturers Hanover Trust Co. v. Aversa, Bankr. No. 77 B 3296 (Bkrtcy E.D.N.Y. January 1979); In re: Jordan, 3 B.C.D. 1292 (Bkrtcy E.D.N.Y. 1977); that there was a sharp change in the buying or charging habits of the Defendant. In re: Poteet, 12 B.R. 565, 568, (Bkrtcy, N.D. Tex. 1981); or that there was a change in the Defendant's pattern in paying off indebtedness. In re: First National Bank of Dayton, Ohio v. Wright, 8 B.R. 625 (Bkrtcy, S.D. Ohio, W.D. 1981); In re: Schnore, 13 B.R. 249 (Bkrtcy, W.D. Wisc. 1981); In re: Aversa Supra.

6

Many Courts have established and adopted a NON-EXCLUSIVE list of those factors which may lead to an inference of lack of intent in the cases of credit line and credit card fraud. They include:

1. The length of time between the charges made and the filing of the bankruptcy;
2. Whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges were made;
3. Number of charges made;
4. The amount of charges;
5. The financial condition of the debtor at the time the charges were made;
6. Whether the charges were above the credit limit of the account;
7. Whether the debtor made multiple charges on the same day;
8. Whether or not the debtor was employed;
9. The debtors' prospects for employment;
10. Financial sophistication of the debtor;
11. Whether there was a sudden change in the debtor's credit access habits;
12. Whether the purchases were made for luxuries or necessities.

See In Re: Sutliff, Supra; In re: Hinman, Supra; In re: Tondreau, Supra

Although the presence of one factor alone may not be conclusive of an intent to deceive, the presence of many or most of them does permit a court to infer thereby that a debtor knew at the time of credit access that repayment would be impossible.

In In Re: Preece, 125 B.R. 474 (Bkrtcy W.D. Tex 1991) the debtor accessed $5,000.00 on his credit card. The debtor made the minimum monthly payments required. The Court also found that at the time of the advances, the debtor had an intention to repay. However, the Court made clear that the test is whether the intention can be held in GOOD FAITH at the time in question. The Court found that the lack of sufficient income, excessive credit debt and surrounding financial circumstances demonstrated that the Court could conclude from a preponderance of the evidence that the intention was not in good faith as he knew the debtor did not have the true ability to repay the advances; See also In Re: Garritano, 103 B.R. 333 (Bkrtcy. S.D.Fla.

1989)(credit card account balance held non-dischargeable when inter alia it was not possible for the debtor to pay the credit account based on salary and magnitude of other debts.)

In In re: Borror, 132 B.R. 194 (Bkrtcy M.D.Fl. 1991), Chief Judge Alexander Paskay again upheld the implied representation doctrine that the debtor must have the <u>ability or good faith belief of ability</u> of income sufficient to pay credit advances. Although the case involved both 11 U.S.C. Sections 523(a)(2)(A) and 523(a)(2)(B), the Court found both sections violated. In reviewing the facts, the Court found the debtor's income insufficient to pay fixed living expenses and credit debt. The debtor failed to established a source of income or potential income that was held in good faith that could have been used to pay credit. As such, the Court held that the debtor's income was clearly insufficient at the time of the credit advances to pay said advances such that the debtor knew or should have known he had no ability to repay the credit advances. Thus, the Court found the credit advances were obtained by fraud under Section 523(a)(2)(A).

These cases make clear that a mere subjective statement by the debtor is not sufficient to negate the presence of numerous factors showing circumstantial evidence of inability to pay. In In re: McDermott, 139 B.R. 50 (Bankr. D. R.I. 1992), Judge Arthur Volotato, Jr. in holding a debt non-dischargeable under 11 U.S.C. Section 523(a)(2)(A) makes clear that even if the debtor had "subjective" intent to repay the debtor, it was not objectively reasonable for the debt to be the same given income compared to expenses and liability for other debt. The Court held the debtor had no reasonable belief in light of his financial situation that he would be able to repay the loan in the near future for purposes of "false representations" exception to discharge.

In In re: Gagney, 138 B.R. 1008 (Bankr. M.D.Fla. 1992), Chief Judge Alexander Paskay held for Citibank under 523(a)(2)(A) against the debtor where at the time of credit advances, debtor's monthly expenses were three times his average gross monthly income. The debtor argued he had a subjective true intent to repay Citibank because the funds were used to attempt to keep the debtor's business afloat. The Court found the debtor knew or should have known he would not be able to meet his obligations and his use of the funds to attempt to keep his business afloat did not negate the fact that the debtor was aware of his inability to repay the debt incurred. In In re: Meeks, 139 B.R. 550 (Bankr. M.D.Fla. 1992) the Court held for Citibank against the

8

debtor who had no rational basis for belief his financial condition would improve sufficiently in the near future to service his debt in accordance with the monthly payments due. In <u>In re: Marlar</u>, 142 B.R. (Bankr. E.D.Ark. 1992) the Court held for Manufacturers Hanover Trust Company in whether the bank had any culpability in issuing the credit card to the debtor was not relevant to determination of dischargeability, The debtor was also found for obtaining cash advances well beyond her living needs and accruing charges when neither the debtor or her husband was employed.

The fifth Circuit recognized in <u>Mercer</u>, 246 F.3d 391 (5th Cir 2001) and other Courts as demonstrated above are in accord that ultimately these questions come down to a cumulative review of the circumstances and finances of the debtor surrounding the charges. See also <u>American Express v Hashemi</u>, 104 F.3d 1122 (9th Cir 1996); <u>Rembert v AT&T Universal Card Services</u>, 141 F.3d 277 (6th Cir 1998). The debtor's financial condition overall is a strong factor to consider not because the ultimate issue is the debtor's ability to pay but rather because the debtor's financial condition when the charges were incurred is probative of whether the debtor intended to pay. As in all other areas of law, the finder of fact may infer that a party intends the natural, foreseeable consequences of his actions. See e.g. Personnel <u>Administer of Mass v Feeney</u>, 442 U.S. 256, 278 (1979); <u>Radio Officers' Union of Commercial Telegraphers Union v NLRB</u>, 347 U.S. 17, 45 (1954).

The facts and circumstances surrounding the Defendant's use of the account and taking into consideration the income, expenses and other unsecured credit compel by a preponderance of the evidence that he could not have held a good faith belief he would have the ability to repay the cash advances and purchases in accordance with the terms of the agreement.

It is clear that the Defendant had neither ability nor income of future ability to actually service fixed debt and credit debt in accordance with the repayment terms of credit. The Defendant obtained the credit under false pretenses and false representations. The use of the account by the debtor is an implied representation that the debtor had the intent and wherewithal to pay for the extensions of credit. The creditor justifiably relied on the representations and extended of credit based on previous credit taken and usage. In fact, the debtor did not have the ability to pay for the advances. As such, the representation of ability and intent to repay were

9

false. The following factors in the case all evidence intent to defraud Citibank (South Dakota), N.A.

The Bankruptcy Petition and case facts show

- The petition was filed on October 14, 2005.
- The debtor owns no real property and therefore no equity exists to access to pay creditors.
- The debtor has no sufficient personal property which could be used to pay creditors.
- The debtor has credit debt of over $125,000.00.
- 

## ACTUAL AND JUSTIFIABLE RELIANCE

Once the Court determines that the debtor has made a representation to the creditor of intent to repay purchases and cash advances, and that the representation was false, the creditor must show that it actually and justifiably relied on the representations. The courts that previously held the creditor must show reasonable reliance have been overturned by the Supreme Court decision of Field v Mans, 116 S.Ct 437 (1995). That case makes clear the lower burden of justifiable reliance is all that is necessary under Section 523(a)(2)(A) as opposed to the reasonable reliance burden under Section 523(a)(2)(B). The standard of actual reliance requires little of the creditor. It must simply prove it in fact relied on the representation of the debtor to repay the credit accessed. See In Re Mercer, 246 F.3d at 413 (5th Cir 2001) quoting City Bank & Trust Co. v Vann, 67 F.3d 277, 281, 284 (11th Cir 1995). Since no rational creditor would extend credit if it knew that a cardholder did not intend to repay the debt, a cardholder's misrepresentation of intent to pay will always be a basis for the creditor to have extended the credit. See In Re Mercer, 246 F.3d at 415-416 (5th Cir 2001). Creditors would certainly not loan money to someone who disclosed the fact that he did not know when or if he would ever repay the money back. In this sense the promise to repay is not merely a substantial factor in determining whether a loan will be made. It is an essential element of any loan. In Re Melancon, 233 B.R. at 326.

Likewise, a creditor showing justification on its reliance is not the equivalent of reasonableness as stated by the Supreme Court in Field. A creditor is not required to conduct an

investigation every time a card is presented or credit extended. In Re Mercer, 246 F.3d at 417. The rationale is straightforward: As the Supreme Court has explained, "contributory negligence is no bar to recovery because fraudulent misrepresentation is an intentional tort" Field, 516 U.S. at 70. See Sanford Inst. For Sav. v Gallo, (In Re Gallo), 156 F.3d 71, 74 (1st Cir 1988). Thus a creditor justifiably relies on the misrepresentation of the debtor unless it has red flags indicting such reliance is unwarranted. In Re Mercer, 246 F.3d at 418; In Re Gallo, 156 F.3d at 75.

There is no question in this case the creditor actually and justifiable relied on the debtor for repayment. The debtor had a zero balance on the account. The account was in good standing. This court should find Citibank justifiably relied on extending credit as in Parkhurst, Supra, wherein Judge Gerling found MBNA justified in advancing credit where the debtor was current on his accounts and had prior good credit history with the creditor, and as stated in In Re Feld, Supra, 203 B.R. at 370, wherein the court stated

> "For example, justifiable reliance exists when a cardholder is using one credit card to pay off another, thereby creating the illusion that he intends to pay his credit card debt and honor his credit agreement. That practice known as kiting, induces the lender to extend credit in justifiable reliance on the debtor's satisfactory account history. Citing Citibank (South Dakota), N.A. v Eashai, 87 F.3d 1082 (9th Cir 1996).

As with the issue of intent, the court must look at the creditor's basis of belief in advancing credit. As Stated in Parkhurst, Supra, the court should not expect a credit investigation every time a customer makes a transaction. 202 B.R. at 823. Instead, the status of the account before and at the time of the subject advances should be given the most weight on the issue of justifiable reliance. See also In Re Feld, Supra 203 B.R. at 370.

**DAMAGES**

Once the other elements are proven, the issue of damages can be demonstrated by the creditor showing the subject advances or purchases in regard to the date, description and amount of charges. The account statements and or testimony from Plaintiff's representative can conclusively demonstrate the sum claimed. Absent some objection or error on posting shown by the debtor, the damages will be self-evident and well established. Cf Citibank v Jones, 272 A.D.2d 815 (3rd Dept 2000) leave to appeal denied 95 N.Y.2d 764; Citibank v Coughlin, 274

A.D.2d 658 (3rd Dept 2000); <u>Citibank v Poynton et al,</u> 187 Misc2d 397, 723 N.Y.S.2d 327 (2nd Dept Appellate term 2000).

## CONCLUSION

Plaintiff has met its burden of proof with regard to the elements of 11 U.S.C. Section 523(a)(2)(A) and requests the debt be held non-dischargeable and for entry of judgment against the debtor pursuant to Bankruptcy Code Sections 523(a)(2)(A).

Dated: February 14, 2006 /s/ Douglas M. Fisher

                                                   Douglas M. Fisher
                                                   Solomon and Solomon, P.C.
                                                   Attorney for Citibank
                                                   Five Columbia Circle, Box 15019
                                                   Albany, New York 12212-5019
                                                   (518) 456-7200